The second case of the day, which is 21-12469, nope, sorry, wrong number, 22-13396, Graham v. Attorney General of the State of Florida. Georgia, thank you to Judges Luck and Branch, both, who pointed out my error. Whenever you're ready. Thank you, Judge Newsom, Judge Branch, Judge Luck. Good morning, and may it please the Court. This Court should vacate the District Court's order denying a preliminary injunction because the Court made two legal errors. First, the District Court incorrectly held that the plaintiffs sued the wrong defendants for their First Amendment claim. And second, the District Court failed to address the plaintiffs' equal protection claim at all. Each error is fatal to the District Court's ruling, and this Court should therefore vacate and remand to the District Court for further proceedings. Can I ask you a standing question out of the gate? So the complaint that you filed dealt with an election that has passed. In your complaint, you say that Graham plans to run again as a Libertarian candidate for statewide public office in future elections. But I don't see anything in the complaint that says that he has a specific intention to run for a specific upcoming election and a Libertarian party, and I don't see an allegation that the Libertarian party intends to support a candidate in an upcoming election. Does this create a standing problem for you that the injury that you filed this complaint about has evaporated because the election has passed, and this is all just future speculation? No, it doesn't, Judge Branch. Thank you for the question. Let me address the mootness question more generally because I think that is what your question gets at as far as the standing component, whether there's still relief that this Court can afford, and my answer to that has three parts. The first part is yes, this Court can afford relief because of the nature of what a leadership committee statute is and does. There are, as relevant in this case, the leadership committee statute does two things. It eliminates the contribution limits on certain candidates for governor and lieutenant governor, but not others. That's in subsection E of the statute. The other thing that it does is it relaxes the restrictions on what a candidate can do with that money, and that appears in subsection D mostly and a little piece of subsection E of the statute. So the reason why that's relevant here, Your Honor, is that if this Court grants relief today, Ryan Graham could still use that money today. Can I ask a question about that? Yes. Isn't there also a requirement, whether it's by regulation or statute, that the leadership committee wind down with a certain number of – let me finish my question first before you shake your head no. That it has to wind down within a certain amount of time after the election is over? Absolutely not, Your Honor. There is an article – in fact, a recent article in the Atlanta Journal of Constitution from July 11th about Governor Kemp's leadership committee statute, and the headline is Kemp's Leadership Committee Remains a Powerful Political Tool. Well, of course, the counsel – of course that's going to be true for the governor because the way the statute is written is the sitting governor, the sitting lieutenant governor are able to do it. Then the other two categories of folks are nominees of political parties. Does the statute not say within a certain number of days afterwards that those committees have to wind down from the election of those nominees of political parties? Does the statute say it or not? I don't see that in the statute, Your Honor. That hasn't been raised so far in the case. But even as respect to Ryan Graham, he has campaign debts from 22 that he could still repay, so the relief would still be effective even as to the past election, but the leadership committee statute allows a leadership committee to get – Counsel, counsel, section 21-4-34.2, subsection C. If a person chairing a leadership committee ceases to hold the office or the status as nominee of a political party as described in subsection A of the code, such person shall transfer the remaining assets of the leadership committee, if any, to another leadership committee within 60 days or dot, dot, dot, dot, or dispose of the leadership committee's assets as provided by code section 21-5-33. Yeah, so my response to that is I don't think he ceases to be the nominee until there's a new nominee. That's wrong. I mean, I'm sorry. That's just wrong. Okay, I read that section differently. If I think that's wrong and I'm the only one telling you that, then you would have a mootness problem, would you not? No, because part two of my response is that the Libertarian Party is a party here and has an enduring interest in the outcome of this case, and let me explain why. The biggest reason is candidate recruitment, right? It matters whether Libertarian Party candidates are going to have to fundraise at the retail level or whether they're going to be able to fundraise at the wholesale level like their competitors from the Democratic and Republican parties. Doesn't there have to be, and this goes to Judge Branch's question to you, which I thought was very specific, which is, doesn't there need to be allegations of what you're saying? In other words, I don't disagree with you. If the allegations were the Libertarian Party intends on recruiting candidates for this and needs this in order to be able to recruit candidates, then I think you have a good point. But none of that's in there, is it? Well, I would say this case was decided very early, I think six days into the case. And so I don't think that that's a mootness fault right now. I think that, you know, that on remand we can develop those facts. But the Libertarian Party has run candidates for governor and lieutenant governor in every cycle going back, I believe, to 1980. It is certainly going to run candidates for those offices in the future. And it needs to know now what the fundraising playing field is going to be in the next cycle so that it can recruit top quality candidates. And if they can not raise the same kind of money from the same kinds of donors that the Democratic and Republican candidates can raise, then that puts them at a disadvantage today. Let me ask you a quick fact question that I can't tell from the record. When was Mr. Graham officially nominated by the Libertarian Party as a candidate in the election for lieutenant governor of Georgia? Georgia law requires political bodies to hold nominating conventions prior to candidate qualification. I don't remember the dates in 2022 of the Libertarian Convention, but it would have been before qualifying occurred in March. So when the convention announced the nominee, that is when he was officially nominated? It's not clear to me what the law would consider officially nominated, but, yeah, I think that's a reasonable question. Because there's an allegation that Mr. Graham, that there was a delay in seeking this relief. And so I just am trying to figure out how long the delay was. So I don't think the delay matters as far as irreparable harm. This is a constitutional case, and the case law is quite clear, both in the circuit and at the Supreme Court level, that the deprivation of constitutional rights is an irreparable harm. Let me ask you another sort of merits question, by which I mean not the merits of the claim, but the merits of the standing issue, setting aside mootness. So you started off by saying one of their arguments is that we sued the wrong defendants. Frankly, I thought the more sort of the more trenchant piece of the district court's analysis is that you might have challenged the wrong statute. What does enforcement of the leadership committee statute look like? I mean, like, if you've asked for two injunctions here, one, the broader one, strike it in its entirety, that remedies our equal protection claim or our unequal treatment claim. I kind of get that. The narrower injunction, don't enforce pieces of it. What does that injunction look like? So thank you for that question. I think that's something that's not clear in our briefing, and I appreciate the opportunity to clarify that. I think it's actually very simple. Ryan Graham has a campaign committee right now. If he were to accept a donation for $10,000, let's say, and he reports that in the normal cycle for his campaign committee, her clients would say, aha, that's a violation we're going to enforce. A violation of what? Of the contribution limit statute or the leadership committee statute? Of the contribution limit statute. But have you challenged that statute? This is my question. It seems like enforcement would be enforcement pursuant to the contribution limit statute. It would, Your Honor, but the same is true in FEC versus Davis, where subsection A of the challenge statute there raised the contribution limits on contribution limits for Davis' opponent, right? And yet the Supreme Court found that he had standing to challenge that statute. So we're right in the FEC versus Davis. But he was, in Davis, he was challenging the specific statute that was causing his limit. Here you are challenging the leadership committee statute and asking us, in essence, to allow the Libertarian Party to now form a leadership committee under a statute. And what your opponents are saying is what you're really saying is you want to cause the defendants to not enforce the campaign contribution limits against your clients. So you've challenged the wrong statute. So, Your Honor, in FEC versus Davis, there were two challenges. One was subsection B that applied to Davis, and one was subsection A that applied to Davis' opponents. And Davis was found to have standing to challenge both of those. Like I said, we're right in that framework. I don't think it matters whether the injunction here would enjoin the defendants from enforcing the contribution limits against my client because of the unconstitutionality in the leadership committee statute or whether it enjoins the enforcement of that statute itself. I mean, I think we are right within FEC versus Davis on that score. Okay, good. Let's hear from your opponent, and then you'll have your rebuttal time. Thank you, and may it please the Court. Before we get to the issue of standing, which I know is the subject of a lot of questions, I wanted to begin by reminding the Court of the posture that we are in right now, that this case is before this Court on the denial of a motion for preliminary injunction. That's extraordinary relief that is only to be granted to preserve the status quo in cases where there is an immediate need for such relief. If at any point there had ever been grounds for the grant of a preliminary injunction, which we claim there was not, there certainly is no grounds for that today. There is absolutely no credible claim that Judge Cohen's order should be reversed and that a preliminary injunction should be entered at this point. To address the very good questions that were raised by Judges Branch and Luck, it is absolutely correct that today there is no campaign. There may be an active campaign account. There may be a bank account that has balance in it, but there is no longer a campaign. This candidate lost. How does the State read subsection C of the relevant statute? Very similar to the way that it reads the statutes that govern any unsuccessful candidacy. Because if you look at OCGA 21-533, there are only certain things that can be done with campaign funds. And successful and unsuccessful candidates have always been treated a little differently because Sorry, to fast forward us, but is it your position that the campaign committee for a nominee has to be, the leadership committee has to be wound down 60 days after the person loses the election? Correct. It needs to be wound down. The only conceivable way that a candidate like this could accept funds now would be to cover campaign debt. They can't accept any funds right now as far as we know for a future candidacy because as far as we know, no declaration of intent to form a campaign and accept contributions has been filed by this candidate. Let me just make sure I'm understanding. So in response to Judge Luck's question, you just said, well, they could maybe accept campaign, the leadership committee could accept campaign contributions even after the wind down to pay off campaign debts or no? Because he said his guy has campaign debts. Well, I'm not sure that that's in the record. Assuming that there are some campaign debts, then you'd have a question. And this is not covered by anything in the record right now in terms of whether or not this mysterious donor that said during the campaign that they were wanting to contribute funds in excess of the limit. Is that donor still willing to contribute to a nonexistent candidacy at this point? Counsel, I really need a simple answer to this question. Not whether you can accept campaign contributions or not. The leadership committee only, its existence. Must its existence cease to exist 60 days after a nominee loses an election? I believe it needs to begin that wind down process. And in that capacity, I'm not entirely sure that it would be appropriate to continue as part of that wind down to take in additional funds to retire debt. I think that's possible. It says dispose of assets within 60 days. It gives you three things within 60 days. Transfer to another committee, name another eligible person to lead the committee, or dispose of the assets. Correct. And I think that's a very interesting but hypothetical question in terms of what Well, it's a very important question for the mootness issue. So please tell me what the state's position is. Is it that the campaign, is it that assuming there's no one else, there's no one else you wish to transfer it to because no other libertarian party has it under the statute, and you can't name someone else because, again, the libertarian party isn't eligible. Must someone dispose of the assets within 60 days? I think the answer to this mootness question is whether this candidate can accept funds or not. And that would depend on facts that really aren't in the record right now before the court and probably would need to be addressed at the district court level. Our understanding based on the campaign CCDR's campaign contribution disclosure reports that have been filed is that there is a small amount of debt that is less than the amount of the 21-541 campaign contribution limits and that therefore there would be a mootness issue. Let me just stop you. So I guess my question to follow up on Judge Locke's is, is it the state's position, this is just a question of statutory interpretation. It's not really about the facts of this case, but does subsection C prohibit the leadership committee post-wind down from accepting contributions to retire debt? And I don't really think it has anything to do with the facts of this case. It's just a question of what the state law means. I think that there may be a conflict between the way that leadership committees are treated and the way that other candidates typically are treated. But it does appear that there's a directive in subsection C of the statute that tells the leadership committees what to do when the candidate is unsuccessful. If that candidate has debt, I don't know how that will work out for that candidate. So I think, not to put words in your mouth, but I think your ultimate answer to Judge Locke is, yes, there has to be a wind down, full stop, and no, the leadership committee cannot accept campaign contributions to retire debt. That's my understanding. I think that they would need to do that within that 60-day period post-election to try to wind down that debt quickly. But you also said that the amount of campaign debt that Mr. Graham has, he could accept campaign contributions to retire that debt and not run afoul of the campaign contribution limits. The last CCDR that I have seen was under the $7,600 limit. It was $6,000 and change. And I know that we have in the supplemental appendix some CCDRs. I'm not sure, though. I believe that the CCDRs that are in the record may not be the most current ones. But they are a matter of public record and are available on the State Ethics Commission website, ethics.ga.gov, if the court wishes to take judicial notice of those. So can I talk standing with you for a second? Sure. So assuming we get past mootness, we get to the standing issue. And at least in your brief, this wasn't the basis the district court relied on, but at least in your brief, you say that there's no injury in fact here because they are targeting the wrong statute. They are injured by the campaign contribution statute and not by the leadership committee statute. Is that a fair articulation of your argument? Exactly. Okay. So let me ask you this question. Let me ask you this hypothetical. Imagine Georgia has two statutes. Statute 1 says that every Georgian must pay 1% of their income tax to the State of Georgia to pay for the running of the state. And Statute 2 says that if you were of the race purple, then those of the race purple are entitled to a $1,000 refund for their income taxes. Am I not injured if I am a race that's not purple? Am I not injured by the second statute? I think that that fits much more squarely within the Davis holding than this case does. So I am injured by the — for injury in fact purposes, I am injured by the second statute. I think that would probably give rise to a valid equal protection claim, but I don't think we have one here. I'm not talking about a valid claim because we're not on the merits. Is it an injury for constitutional purposes? I think in that case the non-purple tax payer is deprived of $1,000 and can make that allegation. Because of Statute 2? Correct. So let's do it here. Every candidate of any stripe of any political body or party is limited to here at $7,600 for contribution limit for the primary and then for the general election. But then there's a carve out for some subset of people, whatever those subset of people are, for those two people to get more than $76,000 per contribution for the primary and general election. If I am outside of that subset, why am I not injured in the same way as the tax statute? Well, so in your hypothetical, the taxpayer actually is out $1,000. In this case, the only thing that was evidence of injury was the one affidavit from this donor that said I'd like to give. So it would be, I just want to, so if I understand what you're saying, it would be an injury, it's just there's a lack of proof that there was somebody who wanted to donate or that they would have collected more than $7,600. Correct. We felt that that was very speculative in terms of the actual limit. Okay. So that is actually your argument. Not that there's not an injury from Statute 2, but that they didn't prove that they in particular were injured by Statute 2. I think our argument currently, as Judge Branch pointed out, is that any injury has evaporated at this point because that affidavit can no longer be relied on. Getting past mootness. So to answer my question, your argument here today is not that Statute 2 doesn't create an injury, but that they didn't prove that they are outside or eligible for the relief that those inside the statute are entitled to. Am I right? As I understand your conclusion, yes, but I do want to point out that we think that if there is any injury, it isn't caused by the Leadership Committee statute itself. We'll get to that. We're going to get to that. So the affidavit they presented, again, put mootness aside, says that there's a donor who wants to give them more than $7,600 during the last election cycle. Why does that not put them squarely in the group that is allowed to do that, but that they are prohibited by law from doing it? Well, that is what Judge Cohen found and nevertheless found, that there was not traceability, redressability, or a likelihood of success on the merits, which, again, I really want to emphasize, there's absolutely no injunctive relief. Aren't we entitled to give deference to that finding and only overturn it if it's not supported by some evidence in the record? In other words, if it's clearly erroneous? At this point, the probative value of that evidence is highly questionable given that we don't know if that donor, first of all, would still be willing to donate to a nonexistent campaign at this point, and also given the fact that the only permissible acceptance of funds is to cover debt and that that debt is less than the amount of the campaign funds. Okay. So let's get, I think I understand your positions with regard to injury in fact. So let's get to traceability and redressability. So Judge Newsom asked your opposing counsel about one portion of the relief, but there's another portion of the relief which is very clear, which is you cannot enforce Statute 2. You can, nothing about Statute 1, but you can't enforce Statute 2. Does that not redress the equal protection injury? Not really because it still has this candidate in the same exact position. I don't understand that at all. You're going to have to unpack that for me. Me too. Well, you know, that's one thing the district court had trouble with is what exactly is this relief? Well, they definitely saw it. You know, there are two injunctions, right? There's a narrow injunction that they've asked for. Hard for me to figure out what that looks like, frankly. The broader one is you may not enforce the leadership committee statute at all, and they say now we're back on a level playing field. Good to go. So the problem with that is what does enforcement look like? Because really none of, neither of the appellees has done anything to enforce the statute. The only action that either of these parties have taken at this point is the State Ethics Commission. Is there a statute that authorizes the commission to issue orders directing compliance with this chapter of which the leadership committee statute is one, this part? That's true. The only action that has been taken to enforce the statute is acceptance of registration forms and CCDRs and publication of those forms. Haven't we said, though, and this is triple in this particular case because of this litigation history, that where the state agency seeks to enforce its laws, that that is an indication of likelihood of enforcement? You're here litigating, you were here litigating this, and you or your counterpart were here litigating this when candidate Abrams was here, and you were here litigating this when candidate Perdue was here. So three times the state has sought to litigate this exact thing. Can we really say that the state is not likely to enforce the statute? The statute that would be enforced would be 21-541. There's not really anything to enforce in this statute except for the registration of the committee, which is the filing of a form. You know, there's not any violation of the statute that this candidate could commit. I just don't think I understand that. I don't think I understand that. I mean, if Graham and or the Libertarian Party wants to form a leadership committee and they do it, right, they just bull ahead and do it, it seems to me that one enforcement mechanism available to you would be that the commission can issue an order or the attorney general can bring an action. I mean, that's in the statute. So you say, I mean, I'll have to confess, I thought initially, too, I'm not really sure what enforcement of a leadership committee statute looks like, but I think there is a mechanism for enforcing a leadership statute, leadership committee statute. So if hypothetically this candidate were to file a form that says, I'm creating a leadership committee, that would be at most a technical defect in the form. People file forms registering committees incorrectly all the time. It's common for committees to not understand whether they're an independent committee or a political committee under Georgia law. Those two committees can be kind of difficult to figure out. What about, counsel, what about filing that very form you just mentioned, and I've collected $10,000? Then the violation still isn't of that leadership committee statute. It's of 21-541. Oh, of course it is. They think they're a leadership committee. You're saying you can't do this because you're a political body, not a political party under the statute. In other words, the provision in subsection E of 34-2 doesn't apply to you. Well, and again, we're really into hypothetical territory here, but typically when you have a committee that identifies itself one way and operates in violation of what it's supposed to be doing, the typical charge is not actually for filling out the form wrong. It's for collecting the money wrong or receiving the money wrong, and those statutes that usually apply are 21-534 or 41. Wouldn't the state, if Mr. Graham were to walk in and file a form registering as a political committee, wouldn't the state right now just reject the form? And so couldn't an injunction say don't reject the form? I'm not sure that they would reject it because the statute commands them to receive all information, even if it's information that's not required by statutes. There is a provision for technical defects, and it probably I would think hypothetically might treat that form as a technical defect. Meaning what? In a different statute that applies. So the state would say you have a technical defect on this filing, and by the way, we see that you have received a huge contribution that violates, to your point, the other statute. And they'd enforce, and the state would enforce, again, the campaign contribution limit in that case. It would not, you know, none of these things result in an action for the violation of 34.2. You know, it could be 21-59, it could be 21-533, it could be 21-534, 21-541, depending on what this candidate does. So in your mind, if the complaint here had simply listed the campaign contribution limit statute as among the statutes challenged, this is a totally different case. I see my time is up. That's okay, you can answer. I think it would be a very different case, and a better case, but that's not the case that's before the Court today. And if Mr. Graham had wanted, as part of his relief, to have the state not be able to enforce this political committee statute at all, would he have needed to sue his opponent or his opponent's committee? That was the way that Judge Cohen dealt with it in the other two cases, that, you know, you can level a playing field up or you can level it down, and Judge Cohen felt that leveling it down was the way to go in those two cases. There are some differences between that case and this case, and especially the time differential at this point. Well, and also, could Graham have sued either his opponent or his opponent's committee here under Section 1983? They weren't state actors, were they? Judge Cohen seemed to believe that he could, but we never really addressed that question substantively because Mr. Graham very clearly did not want to go in that direction, was very specific on that point, that that was not the relief he wanted. He didn't want to level down, he wanted to level up and reap the benefits of the statute that he is claiming is not constitutional. Although, in fairness, maybe I'm missing the leveling up and leveling down, but the broader injunction, which says you may not enforce the leadership committee statute at all, that levels everyone down, right? To 7600. Well, you know, at this point, I don't know what purposes they can accomplish with the last election. Keep in mind the 11th Amendment, you know, would only permit prospective injunctive relief, and, you know, we've got plenty of time before the next election. Well, that's the mootness issue, but setting aside the mootness issue, I mean, isn't that a valid level down injunction? I think that, you know, a whole different case would have to be made in terms of keep in mind that in a preliminary injunction, you know, the cases have recognized that there is irreparable harm to the state when a duly enacted piece of legislation is enjoined, and I think we'd have to go through that process of talking about the balance of harms and what, you know, and the timing and the necessity for that. But with respect to redressability, that would redress the unequal treatment injury, the leveling down to 7600 for everyone. I think that would definitely be closer to being constitutional than the relief that is being sought by the appellant. Okay, thank you very much. All right, Mr. Sells, let's hear from you on rebuttal. So let me say a few more words about remedy. I don't think this Court needs to decide between the various options. I think there are at least three or four options now on the table for remedy. The district court likely has a range of options that in its discretion. Counsel, that's not the way it works. I mean, if we get to standing, you, as the leader of your lawsuit, the master of your complaint, gets to decide what remedy you are seeking. You've sought two things, those which Judge Newsom has very eloquently talked about. We, to require standing, need to connect injury, traceability, and redressability to each of those specific injuries. The Supreme Court has told us not to do it in gross, but it has to be specific to the remedy. So the remedy is very important, and it's not a menu. You picked off the menu, and we're stuck with those choices, and now we have to decide whether there's standing with regard to the remedy and whether there's a live lawsuit with regard to the remedies that you sought. Sure. With respect, Judge Luck, I think Judge Branch identified another potential remedy that this Court could consider that is simply enjoining the defendants from failing to accept the form. But, counsel, you didn't seek any of that. In your relief, in your preliminary injunction, you sought two things. Yes. Again, I'm not going to do this as eloquently as Judge Newsom did, and I'm not reading from it, but you sought to enjoin the part that dealt with defining a political party to allow it to accept it from political bodies, and you sought to enjoin the statute in whole. And I think one is very eloquently said, one is a leveling up to treat you the same as lieutenant governor candidate for the main political parties, and the other is to level down to treat everybody the same under the original one. Those are what you sought. Yes. You could seek something else when we dismiss this thing, but right now those are the ones you sought. My point, Your Honor, is that the district court can handle the details of those two options with consultation from the State as well. Let me turn back to the mootness question. Mootness was never briefed in this case. There's obviously confusion with the State's counsel about the reading of the case, excuse me, the reading of the statute, and Judge Luck, again, I respectfully disagree with your reading. May I suggest that this case might be an appropriate one for supplemental briefing by both parties within a couple of weeks on that narrow question of what subsection C requires? Yes, we'll confer. And if we decide we need supplemental briefing, we'll issue an order for it. Yes, another option would be to certify the question, but I think supplemental briefing would be the appropriate next step here where there's ambiguity over what the statute means and neither side has briefed it. And you also heard from Ms. Young that this doesn't seem, within the context of the other campaign finance laws in Georgia, this does not seem to require a wind down within 60 days. Let me ask you this. Assuming it does require a wind down and assuming that Mr. Graham would like to be able to pay off campaign debts, what about the fact that the remaining campaign debt is beneath the campaign contribution limits? I think that only goes to one part of what the leadership committee statute does because the leadership committee statute also allows the committee to give to other committees. I said assuming the statute is requiring the wind down and thus allowing only for the payment of campaign debts, what about the fact that his campaign contribution limit would not be exceeded by paying off the campaign debts? So if Mr. Graham got a $50,000 donation, he could put it into a leadership account, pay off the account debts, and then transfer it to some other committee. So I don't think that resolves the issue, Judge Branch. Can I ask you the same question that I asked your adversary at the end of her argument? If you had challenged both statutes, the contribution limit statute and the leadership committee statute, would a lot of the weeping and gnashing of teeth here have been averted? I think the answer to that is clearly yes, Your Honor, and we addressed that in our reply brief that under the Leatherman case, there's not a heightened pleading standard here. The government was on notice of what this case was about from the very beginning, and this complaint doesn't violate. I'm not really sure it's about. The question I'm asking really isn't about notice. It's about, I think it's about redressability, traceability and redressability, whether the enforcement that would occur is actually under the leadership committee statute or whether enforcement would be sought under the campaign contribution statute only. Well, I don't think that it matters for the reason that Judge Luck pointed out in his hypothetical, that it's the injury that's caused by the leadership committee statute. Well, I think his hypothetical covers injury in fact. I'm not sure. I mean, by his own framing, it doesn't cover traceability and redressability, right? That's 100 percent right. That's a separate question. In other words, the state attacked injury. I think the state's likely wrong on the injury thing for the reasons my hypothetical points out, but that doesn't answer the question that Judge Newsom has about redressability. How does what you asked for, enjoining the statute, take care of the problem that you are seeking? Well, if they can't enforce the leadership committee statute at all, then nobody has a leadership committee. That clearly redresses the equal protection claim. I think that would also address. So how about the other relief? So I think I might agree with you on that, but how about the first part, which is enjoining, I don't know how this would exactly be done, but enjoining the enforcement of the part of the statute that refers to nominees of political parties? Then I think under that scenario, one of two things could happen. Either Graham could accept that $10,000 within his existing committee and they can't prosecute him for it, or he could submit a form and they'd have to accept it. I want to say one last thing on the standing, and this regards your 60-day wind-down provision. If that's the case. It's not mine. The state of Georgia passed it, but okay. Excuse me. Your reading of that provision, Judge Locke. If your reading is correct, then I think that goes to the third piece of my mootness argument, which I didn't get to explain before, but that's capable of repetition and yet evading review. Because if that period is narrow and is limited to that 60 days, then I think we're in Davis versus FEC territory. I will say that's really hard to make, where the Purdue and Abrams cases seem to be litigated well within the time frame, and as I think Judge Branch pointed out, there was a failure to bring a lawsuit from March when this thing would have started all the way until, I think we brought this, what, October? Well, fair, but the Abrams and the Purdue cases weren't decided on appeal, and FEC versus Davis is a challenge to a very similar statute in which the Supreme Court found specifically that Davis had standing because it was capable of repetition yet evading review. Very good. Thank you so much. So that case is submitted.